Let's take up our next case, Young v. Minton, argument for the appellant. Good morning, Your Honors. I'm Charlie Stegmaier. I represent the appellant in this case. In July of this year, Governor Ronald Reagan signed into law a statute that extends the statute of limitations for wrongful death to five years. It is active as of January of next year. It is called Molly's Law. Now, how did we get to that law? In April of 2012, I'm sorry, March of 2012, Molly Young was found dead in her boyfriend's apartment. At 3.30 a.m. There was an investigation. However, as pointed out in my brief, Mr. Larry Young and his wife were very unhappy with what was going on. And they were convinced that something else had happened to Molly Young, and they wanted to know the answer. They had no previous knowledge of how the system operates. They relied on the investigative arm of the law, i.e., sheriff, local sheriff, state's attorney grant. In January of 2014, as in my brief, of course, there was a Carter's inquest. And up until that time, Mr. Young had learned of a number of facts that led him to believe, again, that Molly's death had more implications than was obvious. In the corners, people ruled that they could not come to a conclusion as to the cause of Molly's death. In April of that same year, he received another indication that there was evidence to be obtained concerning the facts surrounding this case. A lawsuit then thereafter was filed, a wrongful lawsuit, because at that time, Mr. Young had felt that he had the cause of action. I want to devote my part of this argument to under the civil discovery statute, we have what's called fraudulent concealment. Now, under fraudulent concealment, the statute is five years. Now, it has been applied in medical malpractice cases, in crimes of liability cases, but to my knowledge and research, yet in a wrongful death case. However, it applies here, pulling from the brief by the defendant, in order for fraudulent concealment to apply, the appellate, Mr. Young, must allege facts demonstrating that his opponent affirmatively attempted to prevent the discovery of the purported grounds for belief, and must offer factual allegations demonstrating his good faith and reasonable diligence in trying to uncover such matters before trial or within the limitation period. Now, the statute at that point in time is two years. Mr. Young had that small period of time to find out, in good faith, and in reasonable diligence, whether there was factual concealment, fraudulent concealment. Now, in order to do that, Mr. Young, during the period between the death of his daughter and his present day, utilized whatever he had as a citizen to uncover facts of his case. He used certain things that were possible. Page 9 of my brief. Here were the actions of the defendant the night or early morning of this tragedy. One, the defendant called Molly Young around 3 a.m., pretending to be drunk, and lured Molly to his apartment, and then barricaded for the sole purpose of committing a wrongful act. Two, the defendant wiped the .45 caliber weapon, the weapon used in this incident, clean fingerprints. The defendant took off his clothes, took a shower, washed his clothes, waited four or five hours to call the authorities, refused to give the authorities a statement, hired an attorney to protect him, placed the pills under her body, absorbed the blood from her nose, and gunshot to her head. Now, what was available to Mr. Young after the time he was doing this research was the Freedom of Information Act. Now, what is significant about the Freedom of Information Act is that the authorities have, including the police department, state attorney, state police, what have you, the city, an exception. They can claim that the matter is under investigation and or a release of photographs of the scene could be a violation of the privacy of the remaining people. But the point is, it's time consuming. It doesn't happen overnight. You can't just file and then the response comes back that it's under investigation. It's a roadblock. Time is money under the old statute. You have two years. It's noted in the appellate brief. He questions the time between Molly's incident and the filing of the lawsuit. What was he doing? Well, what he's doing is constantly communicating with the attorney general's office, police departments, and whoever else may have been involved in this investigation. And that good faith attempt by Molly Young, Bob and other people, demonstrates his attempt to uncover the truth. Was there something that Molly's roommate did that caused her death? Was it suicide? Was it murder? And that is why we believe that the five year statute of limitations should be in my opinion. This is why the statute under Molly's law was extended for five years. It takes from a layperson's knowledge time to gather information. At the coroner's inquest, whoever he knew should have known that he may have had a cause of death. He may have had a cause of death, but he had to clarify the fact. This new law will not applicable in this case in my opinion, gives people such as Larry Young the time, the opportunity, and the tools to bring closure to an incident that parents of children know. Thank you. Thank you, counsel. I'll argue it for the appellee. Good morning. May it please the court, counsel. My name is Brian Rue and I represent the appellee and defendant, Richard Nett. I won't spend much time on the new law that has been passed in the state of Illinois. I agree with counsel, it's not applicable here in any way. It hasn't even gone into effect yet. I believe the effective date of it will be January 17th. As my understanding, it is not applicable in the case at hand and deals with other issues. The facts are these as it relates to this case. Molly Young was found deceased on March 24th, 2012 in the home of the defendant, Richard Nett. From what appeared to be a gunshot wound to the head. That is a sudden traumatic event. The case law in Illinois speaks very clearly as it relates to that and the Supreme Court of the state of Illinois talks very clearly to it in Williams v. Brown Manufacturing as well as Berry v. G.D. Searle, the company which I have cited. And that is single action statute of limitations begin when a traumatic event occurred. We know the traumatic event happened. Now there is, at that point in time, discrepancy as to what did happen. This wasn't the case of a disease that lingered on for several months with no known cause of the ailment or no known cause of death in any way, shape, or form. Which is what the Supreme Court talks about in the Williams and Berry cases. This is a sudden traumatic event. It is in dispute as to what happened. And when we look at that, it's clear that the statute of limitations I believe in the case law in the state of Illinois is it begins on that day. It's a sudden traumatic event. Now, so effectively we would argue that any discovery rule that has been applied by Illinois courts periodically in medical malpractice cases and in other instances, which they're trying to get to apply now to a wrongful death case, which I don't believe has been done or is properly to be done. But I will then proceed forward stating that I don't believe that the discovery rule applies. But if this court deems that it may apply, I will argue that. And I think the plaintiff's claim still fails. And the reason it would fail is because, one, obviously we have a traumatic event. But in addition to that, they argued that the discovery rule, because there was some fraudulent concealment by the defendant at the time. And if you look at both the argument presented, the brief presented by the plaintiff appellant as well as their complaint, the allegations they allege as to what amounted to concealment is that are the facts of the case that they claim that the defendant pretended to be drunk, that he lured her to the apartment, that he wiped a .45 caliber weapon clean, that he showered and washed his clothes, that he waited four to five hours before calling the authorities, that he refused to give them a statement, that he hired an attorney, and that a 911 call was presented stating that it was an overdose, not what ultimately was found, which was a gunshot wound. They state that that is this fraudulent concealment. First and foremost, as it relates to an individual being questioned by the police on a criminal charge, has every right to assert his defenses being, I refuse to speak to you. He has that right. And I believe in Foster v. Plan, which is a First District appellate court case that I cited, the mere silence of an individual is not fraudulent concealment. You have that constitutional right in a criminal case if charges are possible. He chose to do that. That's in no way fraudulent concealment. As you look at the other factors, this is what they said. Now, they did not present any reports. They did not present a coroner's report. They did not present any factual circumstances nor evidence to say that this is actually what did happen. This is just a ball of assertion by a plaintiff without any documentation nor evidence at the motion to dismiss hearing to say, wait, these things happened. They didn't present anything to that effect, nor do they. I don't believe it is fraudulent concealment under the circumstances. In a wrongful death, many times there are disagreements as to how it took place. And that's what we have here. And that disagreement was from the very beginning. And how a plaintiff could say, well, we just don't know, or we had no idea there could possibly be a cause of action. And I don't believe the case law that I presented to this court nor the case law of the state of Illinois says your time to file a lawsuit begins when you definitively, beyond any shadow of a doubt in your mind, believe that you might or you do have a cause of action. It's when you think there might be. In a car accident, there's always a disagreement as to what happened. And statements are made, and cars are moved, and things take place. But when a car accident happens, you know there's a sudden traumatic event. Someone could be at fault for this. You're aware. You then are placed on notice. You may have a cause of action. And your job at that point, if you want to be a plaintiff, is to then move forward with that. And then determine whether or not there's a cause of action, investigate it, and bring it within two years. Because unlike a criminal case, civil cases, I believe the statute of limitations are set out so that evidence isn't lost, so that time doesn't drag on forever. And lawsuits remain open for periods of time when evidence can disappear, when witnesses' minds go dim. And those are things that are the reasons for these statute of limitations. And I think that's been upheld here. So I don't believe that the fraudulent concealment took place based on the facts that you have before you, which is only this ball-out issue of complaint. And even if you take every one of these as being true, I still don't think it would amount in any way, shape, or form to fraudulent concealment. As it's talked about in the case law, there's fraudulent concealment where a doctor fills out a report and knows he committed malpractice, and or knows there was something there, changes the MRI result, changes the CT scan, and then sticks it off there. There's no way for you to ever find out. There's no way to know. You get sick three years later, and you go, well, what happened to me? What's happened here? And then we get to digging through the records and find out, well, the doctor hid it. If he had written down what he actually did, you would have known right then. But in this case, the injury happened March 24, 2012. We have a day. We know when there's a possibility of it at that point in time. Even in the event that someone could say that they discovered, or the discovery rule applies, that we are in a situation where there was no way for them to discover this because the state's attorney's office is investigating. The state police, which, by the way, as of now, Mike Websick and Mike Carr, Mike Carr, a 26-year veteran of the U.S. Attorney's Office, was the state's attorney at this time. Between the two of them, I think, possibly had 50-some-odd years of prosecutorial experience. No criminal case has been filed as part of the record here before you. There was, as cited by the plaintiffs, a coroner's inquest, January 31, 2013. Even if we take the plaintiff's arguments at face value, which we do, all the way up to this point, the coroner's inquest, January 31, 2013, in their complaint they assert, and in their allegations they assert, that it was inconclusive as to the death. January 31, 2013, 14 months prior to the running of the statute of limitations on March 24, 2014. Fourteen months. And how do we know when the defendant realized that they had a cause of action? They say it, or the plaintiff had a cause of action, they say it in their own complaint. Paragraph 6, that on January 31, 2013, at the coroner's inquest, plaintiff first realized that the defendant was or could have caused the death of Molly Young. They assert it in their own complaint. They say, that's when I first realized it, at the coroner's inquest. Now, I think there's ample evidence to say that there was a question as to that from the very beginning. I would think a criminal investigation would lead you to believe that there could possibly be a lawsuit here. There could possibly be some other explanation. But in their own complaint, they assert that. And I would note that it's signed by Larry Young, the administrator of the estate of Molly Young. Although it was not verified, but it is a signature by him stating that, and it has never been controverted, that is the status of the pleadings as they exist. That they realized that. As that takes place, then we look at the law in the state of Illinois. If we even talk about the discovery, we'll ruin it. If you understand that you may have a cause of action, and you realize that, within the two-year limitations period, and there's sufficient, reasonable portion of that two-year period left within which to file, LESCO is clear. Morris v. Margulis is also clear from the Supreme Court of the state of Illinois. That if there's reasonable time there, even if we take your assertion that you had no idea and didn't know at all, which I would assert is not the case here, they have admitted, January 31, 2013, 14 months before the running of the statute of limitations, that they realized that you may have a cause of action. That's plenty of time. And there is absolutely nothing in the record before you that the plaintiff has presented in any way that says that in those 14 months, they were forwarded in any way in obtaining evidence. It is not in the record. It is not here. All that's there is 14 months. Now, counsel talks about, well, the administrator of the estate of Molly Young is not knowledgeable in the ways of the court, is not knowledgeable in knowing how it works. I understand that. Most people aren't knowledgeable. What it is is the statute of limitations and the laws that are contained therein don't bend or break simply because people don't know that it exists. It's a fact. It's there. It is the law. To say, well, I didn't know that is not a reason to go around it. And counsel talks about the Freedom of Information Act, yet nothing in the record talks about that in any way their attempt to obtain this information was forwarded. In fact, the opposite is true. They say on January 31st, they received all sorts of information, and they even allege all sorts of things they claim are factual circumstances in paragraph 8. They say they derived from that. They were put on notice well within the statute of limitations. Therefore, I believe that their complaint was properly dismissed by the court because as the facts as they sit before you now and the facts as they sat before the trial court show that even if the discovery rule is applied, you're talking about well within the time frame when this could have happened that they had that information, had the knowledge. I will acknowledge if this is a very harsh result. And it's difficult. And I feel for the family of the plaintiff. They want to move forward. They want to investigate. I understand that. But the law is the law. And when counsel cites a law being changed to extend statute of limitations, I think it only goes to say to this court that it was correctly applied the first time. Because if it were not, there would be no reason to change it. To change it is to say it's there. And I don't believe, as we have a separation between the judiciary branch and the legislative branch, those are there for a reason. Because sometimes the legislative branch moves forward with things that aren't proper under the law or they implement laws or actions or try to change things and they do things to help people, make them feel better. They run for election. They are public officials. And they implement laws. Sometimes good laws. Sometimes bad laws. But the court, I believe, is here as a check on that to say the law is what the law is. And sometimes the result of that law can be painful. It can be harsh. But it is right. And it is the law. And at the time this complaint was filed, June 30, 2014, they were over three months after the statute of limitations had exalted. And at that point in time, 17 months since the coroner's inquest, with no factual circumstances presented to this court nor any evidence presented, that they were thwarted in any way in those 14 months and in those 17 months of obtaining information. So respectfully, I would ask this court to uphold the dismissal of the lawsuit with prejudice for a violation of the statute of limitations. Thank you. All right. Thank you, counsel. Any final argument? The defendant turns to the court and points out about the criminal case. That case is still open. Now, in this government, if we have, as I said, fraudulent concealment, why does it have it? Why is it in the statute? Why does it only apply, according to counsel, to medical malpractice by a client? What's good about this court is the opportunity to say fraudulent concealment applies in this case. Why doesn't it? And Larry had more time than two years. He could have presented facts, documents, photographs, whatever, to back his position of fraudulent concealment. He had to rely on what information he got, supposedly, from the police department, investigating arms. He was not satisfied that they were correct. What was he left to do? Again, members of this court, unlock Agatha Christie, which I believe is Hercules Perrault, who gathers the facts and presents them to come to a conclusion with Scott from York. Larry didn't have that. He didn't have that information. He didn't have time to get it. Still trying to get it. Of course this was a traumatic event. We're not saying it wasn't. Traumatic is even not the right word. Give Larry Young the right to continue his quest. Apply for fraudulent concealment. Give him the five years. After January, everybody else is going to have five years. Larry didn't have that. We asked the court to. And they will. And I know you will. Review this. Harsh? Yes. But again, the law gives exemptions. The law is full of exemptions. There's not one black and white. There's all those A, B, C, D. Fraudulent concealment is a civil opportunity. It should be applied in this case. Thank you. Any questions? I don't believe so. Counsel, thanks to both of you for your arguments and your briefs. We'll take this matter under advisement and issue a written ruling.